IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
WESTERN DIVISION

DUIT CONSTRUCTION COMPANY, INC.                               PLAINTIFF

v.                              Case No.  4:13-cv-00458-KGB

SCOTT BENNETT, et al.                                          DEFENDANTS

<u>ORDER</u>

On August 9, 2013, plaintiff Duit Construction Company ("Duit"), filed this action seeking a declaratory judgment that defendants violated the Federal Aid Highway Act of 1956, 23 U.S.C. § 101 *et seq.*, and injunctive relief preventing such violations in the future (Dkt. No. 1).  Duit brings this action against defendants, who are all officers, employees, or commissioners of the Arkansas State Highway and Transportation Department (the "AHTD") or Arkansas State Highway Commission (the "AHC"), in their official capacities only.  On September 30, 2013, defendants filed a motion to dismiss (Dkt. No. 16).  Duit filed a response to defendants' motion to dismiss (Dkt. No. 18), to which defendants filed a reply (Dkt. No. 21).  For the reasons below, the Court grants in part and denies in part defendants' motion to dismiss.  Only Duit's equal protection claim survives.

I.      Background

Duit is a corporation organized and existing under the laws of the State of Iowa and has a principle office in Edmond, Oklahoma.  Duit has done business with the AHTD and AHC in the past and expects to do so in the future.

The Federal Highway Administration, pursuant to the Federal Highway Act, 23 U.S.C. § 112(e), has developed standardized changed site condition clauses that must be included in all federal-aid construction contracts, unless such clauses are prohibited or otherwise provided for

by state law.  In Arkansas, which has no law prohibiting changed site condition clauses and does

not provide guidance on changed site condition situations, all federal-aid construction contracts

must and do contain the federally mandated differing site condition clauses.

The standardized changed site condition clauses govern how the parties would address

any changed site conditions confronted during the project and are found in 23 C.F.R. §

635.109(a):

(1) Differing site conditions.

(i)   During the progress of the work, if subsurface or latent physical
conditions are encountered at the site differing materially from those
indicated in the contract or if unknown physical conditions of an unusual
nature, differing materially from those ordinarily encountered and
generally recognized as inherent in the work provided for in the contract,
are encountered at the site, the party discovering such conditions shall
promptly notify the other party in writing of the specific differing
conditions before the site is disturbed and before the affected work is
performed.

(ii)   Upon written notification, the engineer will investigate the conditions,
and if it is determined that the conditions materially differ and cause an
increase or decrease in the cost or time required for the performance of
any work under the contract, an adjustment, excluding anticipated profits,
will be made and the contract modified in writing accordingly.   The
engineer will notify the contractor of the determination whether or not an
adjustment of the contract is warranted.

(iii)   No contract adjustment which results in a benefit to the contractor
will be allowed unless the contractor has provided the required written
notice.

(iv)   No contract adjustment will be allowed under this clause for any
effects caused on unchanged work.  (This provision may be omitted by the
S[tate] T[ransportation] D[epartment]s at their option.)

Duit alleges that the purpose of the standardized changed site condition clauses is "to encourage

low, competent bids by taking the expense risk of unknown subsurface conditions out of

bidding" (Dkt. No. 19, at 2).  According to Duit, the clauses ensure that "[t]he contractors will

have no windfalls and no disasters" and that "[t]he Government benefits from more accurate bidding, without inflation for risks which may not eventuate" (*Id.*).

In 2002, Duit entered into two construction contracts with the AHTD and AHC. As required by federal law, the contracts included the changed site condition clauses. During performance of the contracts, Duit alleges that the AHTD and AHC encountered a soil condition that was materially different from that which could have been anticipated based upon the disclosures contained in the construction contract. Duit argues that the alleged materially different soil condition constituted a differing site condition within the meaning of the federally mandated differing site condition clauses and that it was entitled to a contract adjustment thereunder but did not receive one. Instead, the AHTD and AHC allegedly directed Duit to "dry, disc, and compact" the top 12 inches of the soil, a labor-intensive method, as opposed to authorizing the use of "B stone" or chemical stabilization of the soil (*Id.* at 4). Duit further argues that the AHTD and AHC continue to violate the Federal Highway Act by interpreting the changed site condition clauses in a way that allegedly obliterates their purpose.

In 2006 and 2007, Duit litigated two claims for additional compensation arising from the 2002 contracts and the alleged materially different soil condition before the Arkansas State Claims Commission (the "Claims Commission"). In 2010, Duit voluntarily dismissed its two previously filed claims and refiled them together. After a hearing held on October 20, 2011, the Claims Commission denied all of Duit's claims. Both Duit and the AHTD and AHC were represented throughout the proceedings by counsel. Pursuant to Arkansas Code Annotated § 19-10-211, Duit appealed the decision to the Arkansas General Assembly. The General Assembly's Claims Review Subcommittee affirmed that Duit was not entitled to additional compensation.

## II.     Legal Standard

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id.* (citing *Twombly*, 550 U.S. at 556).   "While a complaint attacked by a [Federal] Rule [of Civil Procedure] 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (alteration in original) (citations omitted).  "When ruling on a motion to dismiss, the district court must accept the allegations contained in the complaint as true and all reasonable inferences from the complaint must be drawn in favor of the nonmoving party." *Young v. City of St. Charles*, 244 F.3d 623, 627 (8th Cir. 2001).

## III.     Alleged Bars To Duit's Claims

Defendants allege that Duit's claims are barred by *res judicata*; the *Rooker-Feldman* doctrine; the Anti-Injunction Act, 28 U.S.C. § 2283; and the principles of abstention set forth in *Younger v. Harris*, 401 U.S. 37 (1971), and *Colorado River Water Conservation District v. United States*, 424 U.S. 800 (1976).  Having carefully reviewed all of defendants' arguments regarding these issues, the Court determines that none of Duit's claims are barred by them.

In regard to defendants' argument that Duit's claims are barred by *res judicata*, at the motion to dismiss stage, this Court must consider the allegations in the complaint.  The Claims Commission's decision is described in the complaint.  The Court determines that the claims Duit

seeks to advance here are not barred by *res judicata* based on the Claims Commission's decision. Further, references to a now-pending state-court action filed by Duit appear only in defendants' motion to dismiss. There is no indication in the record before this Court of the claims asserted in or of the procedural posture of that state-court action. The state-court action will not be considered by this Court in ruling on the now-pending motion to dismiss.

In regard to the *Rooker-Feldman* doctrine, there is no indication from the face of Duit's complaint that Duit is a "state-court loser[]" asking this court to review or reject any final state court judgment. *See Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 284 (2005). Further, as the Supreme Court has determined "neither *Rooker* nor *Feldman* supports the notion that properly invoked concurrent jurisdiction vanishes if a state court reaches judgment on the same or related question while the case remains *sub judice* in a federal court." *Id.* at 292; *see Hoblock v. Albany Cnty. Bd. of Elections*, 422 F.3d 77, 87 (2d Cir. 2005) ("[A] plaintiff who seeks in federal court a result opposed to the one he achieved in state court does not, for that reason alone, run afoul of *Rooker-Feldman*.").

The Court determines that, because Duit is not seeking an injunction to stay a state court proceeding, the Anti-Injunction Act does not apply. *See Beech v. Select Portfolio Servicing, Inc.*, 4:10-CV-00547-DPM, 2010 WL 2775855 (E.D. Ark. July 13, 2010). Lastly, on the record before it, with the claims Duit currently presents, the Court declines to decide this matter on abstention grounds under either *Younger* or *Colorado River*.

Defendants also allege that Duit's claims are barred by sovereign immunity. The Eleventh Amendment bars private litigants' suits against non-consenting states, state agencies, and state officials being sued in their official capacities in federal court, subject to certain exceptions. *See Will v. Mich. Dep't of State Police*, 491 U.S. 58, 70-71 (1989); *Pennhurst State*

*Sch. & Hosp. v. Halderman*, 465 U.S. 89, 98 (1984); *Monroe v. Ark. State Univ.*, 495 F.3d 591,

594 (8th Cir. 2007).   One exception is the *Ex parte Young* doctrine.   In *Ex parte Young*, the

Supreme Court recognized an exception to state sovereign immunity where a private litigant sues

a state official in his official capacity for prospective injunctive relief.   *Edelman v. Jordan*, 415

U.S. 651, 664, 667-68 (1974) (examining *Ex parte Young*, 209 U.S. 123 (1908)).   However, the

Supreme Court has "refused to extend the reasoning of [*Ex parte*] *Young* . . . to claims for

retrospective relief" because "[r]emedies designed to end a continuing violation of federal law

are necessary to vindicate the federal interest in assuring the supremacy of that law.   But

compensatory or deterrence interests are insufficient to overcome the dictates of the Eleventh

Amendment."   *Green v. Mansour*, 474 U.S. 64, 68 (1985) (citations omitted).   The Supreme

Court has explained further that the *Ex parte Young* doctrine

> has been focused on cases in which a violation of federal law by a state official is
> ongoing as opposed to cases in which federal law has been violated at one time or
> over a period of time in the past, as well as on cases in which the relief against the
> state official directly ends the violation of federal law as opposed to cases in
> which that relief is intended indirectly to encourage compliance with federal law
> through deterrence or directly to meet third-party interests such as compensation.

*Papasan v. Allain*, 478 U.S. 265, 277-78 (1986).

The Court must consider whether Duit's claims are for prospective or retrospective relief.

In its complaint, Duit prays for the following relief:

> that this Court enjoin [d]efendants from accepting federal aid in connection with
> construction projects until the they [sic] fully comply with the federally mandated
> differing site clause by, *inter alia*, removing this "detailed disclaimer that shifts
> the risk of unfavorable subsurface conditions to the contractor" from [AHTD]
> construction contracts; and for all other just and proper relief to which it may be
> entitled.

(Dkt. No. 1, at 34).   The Court determines that Duit has made allegations sufficient to

characterize its Federal Highway Act, due process, and equal protection claims as seeking

prospective relief at this stage of the litigation.  Duit alleges in its complaint that it expects "to continue to do business with [AHTD] in the future" (Dkt. No. 1, at 3, ¶ 3) and that it seeks "prospective injunctive relief for ongoing violations of the federally mandated site clause as well as the Equal Protection and Due Process clauses of the United States' Constitution" (Dkt. No. 1, at 3, 30 ¶¶ 3, 83).  Duit states that its due process rights are being violated because contractors "must present their claims to a legislative body that is constrained by the political process, budgetary and reelection concerns, and whose decisions are not subject to judicial review" (Dkt. No. 19, at 45).  Regarding its equal protection claim, Duit states that it "was not provided equal protection in seeking relief" for defendants' alleged violation of the Federal Highway Act (Dkt. No. 19, at 47).  Although Duit only cites the decision against it as evidence that the Claims Commission treats out-of-state contractors differently, this decision is sufficient evidence when coupled with Duit's other allegations for the Court to reasonably infer that such violations are ongoing.

### IV.      Failure To State A Claim Upon Which Relief Can Be Granted

Defendants argue that Duit has failed to state a claim upon which relief can be granted, which requires dismissal under Rule 12(b)(6).  In its complaint, Duit requests that the Court enter a declaratory judgment that defendants have violated and continue to violate the Federal Highway Act and enjoin defendants from accepting federal aid in connection to construction projects in the future until they fully comply with federally mandated differing site clauses (Dkt. No. 1, at 34).  Duit also argues that defendants have violated its constitutional rights under the Due Process Clause and Equal Protection Clause of the United States Constitution.  The Court will consider Duit's Federal Highway Act, Due Process Clause, and Equal Protection Clause claims in turn.

A.      **The Federal Highway Act**

Defendants argue that Duit lacks a cause of action for its Federal Highway Act claim.

Instead of responding that the Federal Highway Act contains its own private right of action, Duit

responds that it has a cause of action to bring this claim under 42 U.S.C. § 1983, the Supremacy

Clause, and the Declaratory Judgment Act.   Because the Court determines that § 1983, the

Supremacy Clause, and the Declaratory Judgment Act do not provide a cause of action for Duit's

Federal Highway Act claim, the Court dismisses Duit's Federal Highway Act claim for failure to

state a claim upon which relief can be granted.

1.      **42 U.S.C. § 1983**

Section 1983 provides a remedy for violations of federal statutory and constitutional

rights.  *Maine v. Thiboutot*, 448 U.S. 1, 4 (1980).   However, § 1983 creates no rights but merely

provides a vehicle for redress of federal rights already "unambiguously conferred."  *Gonzaga*

*Univ. v. Doe*, 536 U.S. 273, 283 (2002).   To bring a successful § 1983 claim, therefore, a

plaintiff must assert a violation of a federal right established elsewhere.   *Id.* at 285 (providing

that "§ 1983 merely provides a mechanism for enforcing individual rights 'secured' elsewhere,

*i.e.*, rights independently 'secured by the Constitution and laws' of the United States.   '[O]ne

cannot go into court and claim a 'violation of § 1983'—for § 1983 by itself does not protect

anyone against anything.'" (alteration in original) (citations omitted)).

To determine whether a federal statute provides a federal right, courts must inquire

whether "Congress intended to create a federal right," which is the same inquiry used to

determine "whether personal rights exist in the implied right of action context."   *Id.* at 284-85.

"Once a plaintiff demonstrates that a statute confers an individual right, the right is

presumptively enforceable by § 1983."  *Id.* at 284.   However, "where the text and structure of a

statute provide no indication that Congress intends to create new individual rights, there is no basis for a private suit, whether under § 1983 or under an implied right of action." *Id.* at 286.

Courts have held that the Federal Highway Act provides no private right of action because Congress did not intend it to create a new federal right. *See, e.g.*, *Endsley v. City of Chi.*, 230 F.3d 276, 281 (7th Cir. 2000) (holding that enforcement of the Federal Highway Act "is through oversight by an executive agency official, here the Secretary of Transportation. Any violation of the provision's mandates will be handled by the Secretary of Transportation, not private citizens. It is as Congress intended it to be."); *Allandale Neighborhood Ass'n v. Austin Transp. Study Advisory Comm.*, 840 F.2d 258, 266-67 (5th Cir. 1988); *Dopico v. Goldschmidt*, 518 F. Supp. 1161, 1178 (S.D.N.Y. 1981) ("[T]he Federal-Aid Highway Act does not create rights enforceable through § 1983."), *rev'd on other grounds*, 687 F.2d 644 (2nd Cir.). Courts have done so because the Federal Highway Act's text contains no judicial remedy through which aggrieved persons can seek redress. Instead of a private right of action, the Federal Highway Act explicitly provides for an alternative enforcement scheme through federal officials' approval and funding authority. *See, e.g.*, 23 U.S.C. §§ 106(a), 109(a), 116(d); *see also City of Cleveland v. Ohio*, 508 F.3d 827, 850 (6th Cir. 2007) (holding that Highway Administration had authority to withhold federal funds where construction contract did not comply with required terms); *Glasgow, Inc. v. Fed. Highway Admin.*, 843 F.2d 130, 137 (3d Cir. 1988) ("[T]he [Federal Highway Administration] determines whether to concur in the award of a contract on a case by case basis upon consideration of relevant laws, regulations and policy considerations.").

Moreover, courts have noted that there is nothing in the legislative history to suggest that such a right was intended. *Endsley*, 230 F.3d at 281 ("A strong presumption exists against the creation of an implied private right of action and where, as here, there is nothing in the

legislative history to suggest that such a right was intended, we will not imply a private right of action where none appears in the statute.").  In fact, the legislative history of § 112 of the Federal Highway Act suggests that Congress did not intend to create a federal right:

> The Committee also wants to note that any dispute between a state highway agency and a contractor would involve a state contract, and that state courts would retain jurisdiction, as they do now in resolving disputes over contract provisions required by Federal statute.

*See* 133 Cong. Rec. H29-01, 1987 WL 947279 (daily ed. Jan. 6, 1987) (section by section analysis, § 111 of the Federal Aid Highway Act of 1987, amending 23 U.S.C § 112).

For these reasons, this Court agrees with the courts cited above that the Federal Highway Act provides no private right of action and thus that Congress did not intend the Federal Highway Act to create a new federal right.  Because Congress did not create a federal right by enacting the Federal Highway Act, Duit may not use § 1983 to bring claims for alleged violations of the Federal Highway Act.  *Endsley*, 230 F.3d at 282 ("Section 1983 is not available to enforce a violation of a federal statute where Congress has foreclosed enforcement in the enactment itself and 'where the statute did not create enforceable rights, privileges, or immunities within the meaning of § 1983." (quoting *Suter v. Artist M.*, 503 U.S. 347, 355-56 (1992) (citing *Wright v. Roanoke Redevelopment & Hous. Auth.*, 479 U.S. 418, 423 (1987))).

Instead of arguing that the Federal Highway Act provides a private right of action and thus a federal right redressable by § 1983, Duit cites *Blessing v. Freestone*, 520 U.S. 329, 340 (1997), and *Balf Co. v. Gaitor*, 534 F. Supp. 600, 605 (D. Conn. 1982), to argue that a § 1983 litigant seeking prospective injunctive relief need not "establish an independent statutory cause of action under the federal statute at issue" (Dkt. No. 19, at 38).  Because the Federal Highway Act was "intended to benefit contractors and protect them from the risk of unknown and

unforeseen conditions," Duit contends, it can be the basis for § 1983 actions brought by such

contractors, even though it creates no independent private right of action (Dkt. No. 19, at 41-44).

However, the Supreme Court explicitly rejected this argument in *Gonzaga*:

> Respondent reads [*Blessing* and] this line of cases to establish a relatively loose standard for finding rights enforceable by § 1983. He claims that a federal statute confers such rights so long as Congress intended that the statute "benefit" putative plaintiffs. . . . As authority, respondent points to *Blessing* and *Wilder* [*v. Va. Hosp. Ass'n*, 496 U.S. 498 (1990)], which, he says, used the term "benefit" to define the sort of statutory interest enforceable by § 1983.

> Some language in our opinions might be read to suggest that something less than an unambiguously conferred right is enforceable by § 1983. *Blessing*, for example, set forth three "factors" to guide judicial inquiry into whether or not a statute confers a right: "Congress must have intended that the provision in question benefit the plaintiff," "the plaintiff must demonstrate that the right assertedly protected by the statute is not so 'vague and amorphous' that its enforcement would strain judicial competence," and "the provision giving rise to the asserted right must be couched in mandatory, rather than precatory, terms." In the same paragraph, however, *Blessing* emphasizes that it is only violations of *rights*, not *laws*, which give rise to § 1983 actions. This confusion has led some courts to interpret *Blessing* as allowing plaintiffs to enforce a statute under § 1983 so long as the plaintiff falls within the general zone of interest that the statute is intended to protect; something less than what is required for a statute to create rights enforceable directly from the statute itself under an implied private right of action. Fueling this uncertainty is the notion that our implied private right of action cases have no bearing on the standards for discerning whether a statute creates rights enforceable by § 1983. . . .

> We now reject the notion that our cases permit anything short of an unambiguously conferred right to support a cause of action brought under § 1983. Section 1983 provides a remedy only for the deprivation of "rights, privileges, or immunities secured by the Constitution and laws" of the United States. Accordingly, it is *rights*, not the broader or vaguer "benefits" or "interests," that may be enforced under the authority of that section. This being so, we further reject the notion that our implied right of action cases are separate and distinct from our § 1983 cases. To the contrary, our implied right of action cases should guide the determination of whether a statute confers rights enforceable under § 1983.

> We have recognized that whether a statutory violation may be enforced through § 1983 "is a different inquiry than that involved in determining whether a private right of action can be implied from a particular statute." But the inquiries overlap

11

in one meaningful respect—in either case we must first determine whether Congress *intended to create a federal right*. . . .

536 U.S. at 282-83 (citations omitted).   Accordingly, this Court determines that, because Congress did not intend to create a federal right, the Federal Highway Act neither creates a private right of action nor confers a federal right that could serve as the basis of Duit's § 1983 claim.

### 2.        The Supremacy Clause

Like § 1983, the Supremacy Clause is "not a source of any federal rights." *Dennis v. Higgins*, 498 U.S. 439, 450 (1991) (citation omitted).   Instead, the Supremacy Clause affords priority for federal rights created elsewhere over conflicting state laws.   *See id*.   The Supremacy Clause also may provide a private right of action for litigants to claim that a federal law preempts a state law and obtain an injunction, though that is unsettled.   *See generally* Note, Dustin M. Dow, *The Unambiguous Supremacy Clause*, 53 B.C. L. Review 1009 (2012) (exploring whether the Supremacy Clause confers a cause of action).   *Compare Burgio & Compofelice, Inc.v. N.Y. State Dep't of Labor*, 107 F.3d 1000, 1006 (2d Cir. 1997) (concluding that, under *Ex Parte Young* and its progeny, the Supremacy Clause provides an implied right of action for injunctive relief against state officers who are threatening to violate the federal Constitution or laws, which allowed plaintiff's claim that a state law was preempted by federal law to go forward), *and Guaranty Nat'l Ins. Co. v. Gates*, 916 F.2d 508, 512 (9th Cir. 1990) (same), *with Douglas v. Indep. Living Ctr.*, 132 S. Ct. 1204 (2012) (Roberts, J., dissenting) ("[I]f Congress does not intend for a statute to supply a cause of action for its enforcement, it makes no sense to claim that the Supremacy Clause itself must provide one.").

Regardless, "a claim under the Supremacy Clause that a federal law preempts a state regulation is distinct from a claim for enforcement of that federal law." *W. Airlines, Inc. v. Port*

*Auth. of N.Y.*, 817 F.2d 222, 225 (2d Cir. 1987).  Where a plaintiff merely brings a claim for enforcement of a federal law, not a claim that a specific state regulation is preemption by a federal law, the Supreme Court has implicitly but repeatedly held that the Supremacy Clause does not provide a cause of action.  *See, e.g.*, *Sandoval v. Alexander*, 532 U.S. 275, 286-93 (2001) (holding that a plaintiff could not bring a claim that state action violated federal law because Congress did not intend to create a private right of action in that federal statute); *Middlesex Cnty. Sewerage Auth. v. Nat'l Sea Clammers' Ass'n*, 453 U.S. 1, 18 (1981) (same); *California v. Sierra Club*, 451 U.S. 287, 293-98 (1981) (same).

Here, Duit seeks a declaration that the State has violated the Federal Highway Act and injunctive relief to enforce the Federal Highway Act against the State in the future.  Duit does not claim that the Federal Highway Act preempts any specific Arkansas law.  Thus, even if the Supremacy Clause does provide a private right of action for litigants to claim that a federal law preempts a state law, the Supremacy Clause does not allow Duit to bring its claims.

### 3.     Declaratory Judgment Act

The relevant part of the Declaratory Judgment Act provides that:

> In a case of actual controversy within its jurisdiction . . . any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought.  Any such declaration shall have the force and effect of a final judgment or decree and shall be reviewable as such.

28 U.S.C. § 2201(a).

There appears to be much confusion on whether the Declaratory Judgment Act creates a cause of action.  Some courts have ruled that it does not.  *See, e.g.*, *Mylan Pharm., Inc. v. Thompson*, 268 F.3d 1323, 1330-32 (Fed. Cir. 2001) (holding that the Declaratory Judgment Act "is remedial only" and that the Act does not authorize a declaratory judgment action for

"delisting" under the Food, Drug, and Cosmetic Act ("FDCA") when no private right of action for "delisting" exists); *Jones v. Hobbs*, 745 F. Supp. 2d 886, 893 (E.D. Ark. 2010) ("[T]he Declaratory Judgment Act does not authorize actions to decide whether federal statutes have been or will be violated when no private right of action to enforce the statutes has been created by Congress."). Others courts appear to have found that it does. *See, e.g.*, *Nova Biomedical Corp. v. Moller*, 629 F.2d 190, 196 (1st Cir. 1980) ("[M]ailing a letter charging infringement and threatening suit is already a two-edged sword; it is well-established that such conduct creates an 'actual controversy' and thus gives rise to a cause of action under the Declaratory Judgment Act."); *Electro Med. Sys., Inc. v. Med. Plastics, Inc.*, 393 F. Supp. 617, 620-21 (D. Minn. 1975) ("[P]laintiff relies on 28 U.S.C. § 2201 [the Declaratory Judgment Act] for its cause of action."). This Court has not found an Eighth Circuit opinion clarifying the issue.

The Court determines that the Declaratory Judgment Act does not provide a cause of action for a plaintiff to seek a declaration that a state has violated or continues to violate a federal statute that provides no judicially remediable right. This is because the availability of relief under the Declaratory Judgment Act "presupposes the existence of a judicially remediable right." *Schilling*, 363 U.S. at 667; *see Heckler v. Chaney*, 470 U.S. 821, (1985) (finding that the Federal Drug Administration's Federal Food, Drug, and Cosmetic Act ("FDCA") decision was not judicially reviewable because the FDCA's enforcement provisions "commit complete discretion to the Secretary to decide how and when they should be exercised"). Moreover, "the Declaratory Judgment Act is not an independent source of federal jurisdiction," *Schilling v. Rogers*, 363 U.S. 666, 667 (1960) (citing *Skelly Oil Co. v. Phillips Petroleum Co.*, 339 U.S. 667, 671 (1950)), and federal question jurisdiction does not exist where Congress did not intend a federal private right of action for alleged violations of a federal statute, *see Merrell Dow Pharm., Inc. v. Thompson*,

478 U.S. 804, 812 (1986) ("[I]t would flout congressional intent to provide a private federal remedy for the violation of the federal statute [that contains no federal private cause of action]. We think it would similarly flout, or at least undermine, congressional intent to conclude that the federal courts might nevertheless exercise federal-question jurisdiction and provide remedies for violations of that federal statute . . . ."). Judge Leon Holmes reached the same conclusion in a convincing and well-reasoned opinion. *See Jones*, 745 F. Supp. 2d at 892-93.

Duit cites several cases to support its argument that the Declaratory Judgment Act can provide such a cause of action (Dkt. No. 19, at 33). However, all of the cases cited by Duit are in the preemption context, and the right of action was provided by the Supremacy Clause not by the Declaratory Judgment Act. For example, in *First National Bank of Eastern Arkansas v. Taylor*, the Eighth Circuit stated that "[j]urisdiction was invoked pursuant to 28 U.S.C. §§ 1331 and 2201" but clarified in a footnote that the jurisdiction existed because the Supreme Court had made clear that "a party may apply directly to federal court for relief based on an affirmative claim of preemption." 907 F.2d 775, 776 n.3 (8th Cir. 1990) (citing *Lawrence Cnty. v. Lead-Deadwood Sch. Dist.*, 469 U.S. 256, 259 n.6 (1985); *Shaw v. Delta Air Lines, Inc.*, 463 U.S. 85, 96 n.14 (1983)). In *Lawrence County*, the Supreme Court stated that "[a] plaintiff who seeks injunctive relief from state regulation, on the ground that such regulation is pre-empted by a federal statute which, by virtue of the Supremacy Clause of the Constitution, must prevail, thus presents a federal question which the federal courts have jurisdiction under 28 U.S.C. § 1331 to resolve." 469 U.S. at 259 n.6 (quoting *Shaw*, 463 U.S. at 96 n.14). In other words, the Eighth Circuit made clear that the cause of action in *First National Bank of Eastern Arkansas* was based on the Supremacy Clause. As explained above, however, the Supremacy Clause does not provide Duit a cause of action here.

Accordingly, because Duit seeks a declaration that Arkansas has violated and continues to violate a statute that does not provide a judicially remediable right, the Declaratory Judgment Act does not provide Duit a cause of action. The Court notes that it would have reached the same result had Duit alleged diversity jurisdiction instead of federal-question jurisdiction in its complaint, as the Federal Highway Act still would lack a judicially remediable right.

## B.    The Due Process Clause

"To establish a procedural due process violation, a plaintiff must first demonstrate that he has a protected liberty or property interest at stake." *Marler v. Mo. State Bd. of Optometry*, 102 F.3d 1453, 1456 (8th Cir. 1996); *see Stauch v. City of Columbia Heights*, 212 F.3d 425, 429 (8th Cir. 2000). "To have a property interest in a benefit, a person clearly must have more than an abstract need or desire for it. He must, instead, have a legitimate claim of entitlement to it." *Bd. of Regents of State Colls. v. Roth*, 408 U.S. 564, 577 (1972). "Property interests . . . are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law—rules or understandings that secure benefits and that support claims of entitlement to those benefits." *Id.* "Secondly, a plaintiff must prove that he was deprived of such an interest without due process of law." *Marler*, 102 F.3d at 1456.

The Court determines that Duit failed to state a procedural due process claim upon which relief can be granted and thus grants defendants' motion to dismiss Duit's procedural due process claim. First, Duit's complaint, taken as true, does not show a protected liberty or property interest at stake. Duit contends that it has a protected property interest because its due process claims "are based on [d]efendants' ongoing violations of the rights of any contractor doing business with the State of Arkansas that encounters a differing soil condition that should quality [sic] under the federally mandated differing site conditions clause" (Dkt. No. 19, at 46).

According to Duit, such contractors "[o]bviously . . . have a protected property interest in the their [sic] contractual rights upon which they rely to their detriment in forming their bids" (*Id.*).

While, under Arkansas law, the lowest qualified bidder might in some circumstances claim a property interest in a contract, *see L & H Sanitation, Inc. v. Lake City Sanitation, Inc.*, 769 F.2d 517, 524 (8th Cir. 1985), Duit does not base its claim on any specific contract but its general interest, and the shared interest of other contractors, in entering into future contracts with the State without the State violating the Federal Highway Act.  The Court determines that Duit's general interest in entering into future contracts with the State is insufficient to create a legitimate claim of entitlement.  *See Bituminous Materials, Inc. v. Rice Cnty.*, 126 F.3d 1068, 1070 (8th Cir. 1997) (holding that because the county board retained discretion to deny or restrict plaintiff's temporary equipment placement and operation use permit, "[plaintiff's] interest in the permitting process therefore amounts to nothing more than an abstract need or desire, which is not sufficient to establish a protected property interest" (citations omitted) (internal quotation marks omitted)).

Second, even if Duit had shown that it had a protected property interest at stake, it has not shown that it was deprived of its property interest without due process of law.  Duit claims that its due process rights are being violated, and thus are redressable by §1983, "because contractors doing business in Arkansas can never enforce their rights under the federally mandated differing site condition clause in a court of law.  Rather, they must present their claims to a legislative body that is constrained by the political process, budgetary and reelection concerns, and whose decisions are not subject to judicial review" (Dkt. No. 19, at 45).  In support of this argument, Duit cites to a Minnesota state court decision that the Claims Commission's proceedings and

appeal process did not guarantee a fair hearing.  *See D.H. Blattner & Sons, Inc. v. Firemen's Ins. Co. of Newark*, 535 N.W.2d 671, 674 (Minn. Ct. App. 1995).

While this Court may look to the Minnesota court's decision as guidance, it is not bound by it.  Moreover, the Eighth Circuit has given preclusive effect to decisions of administrative agencies, including the Claims Commission specifically, when "acting in a judicial capacity and resolv[ing] disputed issues of fact properly before it which the parties have had an adequate opportunity to litigate."  *Steffen v. Housewright*, 665 F.2d 245, 247 (8th Cir. 1981) (citing *United States v. Utah Constr. & Mining Co.*, 384 U.S. 394, 421-22 (1966)).  Because "[t]he federal common law of preclusion is, of course, subject to due process limitations," *Taylor v. Sturgell*, 553 U.S. 880, 891 (2008), the Eighth Circuit, by giving preclusive effect to decisions of the Claims Commission, implicitly held that the Claims Commission afforded due process, at least in that specific case.

Considering that the Claims Commission generally can afford due process, the Court is not convinced that Duit failed to receive it here.  Due process requires the opportunity to be heard at a meaningful time and in a meaningful manner.  *Fireman's Inc. Co. v. Ark. State Claims Comm'n*, 784 S.W.2d 771, 775 (citing *Armstrong v. Manzo*, 380 US. 545 (1965)).  When an adequate post-deprivation procedure exists, the Constitution's due process requirements are satisfied.  *Id.* (citing *Parratt v. Taylor*, 451 U.S. 527 (1981)).  Duit's only argument is that its due process rights were violated because it must present its claims to a legislative body instead of a Court, an argument for which it cites the Minnesota state  court's decision as support.  As demonstrated by the cases cited above, the Eighth Circuit has implicitly rejected this argument and so does this Court.

### C.    The Equal Protection Clause

Where a plaintiff's equal protection claim implicates no suspect class or fundamental right, as is the case here, courts review it under a rational basis test. *Knapp v. Hanson*, 183 F.3d 786, 789 (8th Cir. 1999). Under a rational basis test, state conduct will be upheld so long as it bears some "rational relation to a legitimate government objective." *Kadrmas v. Dickinson Puc. Sch.*, 487 U.S. 450, 461-62 (1988). Further, under this test, a plaintiff carries the burden to negate "every conceivable basis which might support" the rationality of the state's conduct. *Indep. Charities of Am. v. Minn.*, 82 F.3d 791, 797 (8th Cir. 1996) (quoting *FCC v. Beach Commc'ns, Inc.*, 508 U.S. 307, 315 (1993)); *see Hodel v. Indiana*, 452 U.S. 314, 331-32 (1981) (holding that "[s]ocial and economic legislation . . . that does not employ suspect classifications or impinge on fundamental rights . . . carries with it a presumption of rationality that can only be overcome by a clear showing of arbitrariness and irrationality."); *McGowan v. Maryland*, 366 U.S. 420, 425-26 (1961) ("State legislatures are presumed to have acted within their constitutional power despite the fact that, in practice, their laws result in some inequality."). However, while the government decisionmaker need not "actually articulate at any time the purpose or rationale supporting its classification," meaning that the purpose constituting the rational basis need not have actually supported the decision, the Court must determine that the purpose "may conceivably or may reasonably have been the purpose and policy of the relevant governmental decisionmaker." *Nordlinger v. Hahn*, 505 U.S. 1, 16 (1992) (internal quotation marks omitted). Further, the challenged government action must "rationally advance[] a reasonable and identifiable government objective." *Schweiker v. Wilson*, 450 U.S. 221, 235 (1981).

Duit contends that, as an out-of-state contractor, it was not provided equal protection in seeking relief for defendants' alleged violation of the Federal Highway Act.  In support, Duit cites two rulings, in what Duit claims are "almost identical cases," by the Claims Commission. In those cases, the Claims Commission granted the claims of one in-state contractor (Dkt. No. 1, at 50) and denied the claims of Duit, an out-of-state contractor (Dkt. No. 1, at 48).  Duit alleges that the decisions were based at least in part on the contractors' respective states of origin.

Instead of refuting any conceivable rational basis, though, Duit argues that it "is not required to prove its allegations at this stage in the lawsuit, it only has to plead its causes of action" (Dkt. No. 19, at 47).  In response, defendants cite *Knapp*, which held that a district court may conduct a rational basis review on a motion to dismiss and reasoned that, because "all that must be shown is 'any reasonably conceivable state of facts that could provide a rational basis for the classification,' it is not necessary to wait for further factual development."  183 F.3d at 789 (quoting *Beach Commc'ns, Inc.*, 508 U.S. at 313); *see Carter v. Arkansas*, 392 F.3d 965, 968 (8th Cir. 2004) ("[A] district court may conduct a rational basis review on a motion to dismiss."). In *Knapp*, however, the Eighth Circuit affirmed the district court's dismissal of appellants' equal protection claims at the motion to dismiss stage only after finding that appellees had identified a rational reason for the statute.  *Id.*

While the Court agrees that the issue can be decided at the motion to dismiss stage, defendants have not identified a rational reason for their conduct and instead invite the Court to "conceive of any rational basis that might possibly support the state action" (Dkt. No. 21, at 8). On the record before it and without details as to defendants' decisions or the surrounding circumstances that may have formed the basis of the two Claims Commission opinions, the Court declines to attempt to identify a reasonable government objective that is rationally

advanced by the allegedly different treatment of out-of-state contractors or that may reasonably have been the purpose and policy of the Claims Commission. *See Nordlinger*, 505 U.S. at 16; *Schweiker*, 450 U.S. at 235. Further factual development is needed for the Court to do so, if it is appropriate for the Court to do so with no guidance offered by defendants. For this reason, the Court denies defendants' motion to dismiss Duit's equal protection claim.

### V.     Conclusion

For the reasons above, the Court grants in part and denies in part defendants motion to dismiss (Dkt. No. 16). The Court dismisses Duit's Federal Highway Act and due process claims for failure to state a claim upon which relief may be granted. Duit's equal protection claim survives.

IT IS SO ORDERED this 25th day of June, 2014.


_____
KRISTINE G. BAKER
UNITED STATES DISTRICT JUDGE